UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ZIVIE TAMAM, *et al.*,                               :
                                                     :
                          Plaintiffs,                :          No. 08 CV 6156 (JFK)
                                                     :
            v.                                       :
                                                     :
FRANSABANK SAL, *et al.*,                            :
                                                     :
                          Defendants.                :
-----------------------------------------------------------X

**MEMORANDUM OF LAW OF DEFENDANTS FRANSABANK S.A.L. AND BANQUE
LIBANAISE POUR LE COMMERCE IN SUPPORT OF MOTION TO DISMISS**

**DEWEY & LEBOEUF LLP**
1301 Avenue of the Americas
New York, NY  10019-6092
(212) 259-8000

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ............................................................. 1

THE COMPLAINT'S ALLEGATIONS ..................................................... 3

ARGUMENT……………......................................................................... 5

I.     THE COMPLAINT SHOULD BE DISMISSED FOR LACK
OF PERSONAL JURISDICTION.................................................... 5

     A.    The Governing Standards ................................................. 5

     B.    Defendants Are Not Subject To Long-Arm Jurisdiction
in New York under CPLR § 302......................................... 6

     C.    The Assertion of Jurisdiction Over The Banks Would
Violate Due Process......................................................... 11

II.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE
TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)............. 12

     A.    Plaintiffs' Conclusory Allegations With Respect To All Counts Of The
Complaint Are Insufficient To State A Claim Under Prevailing
Pleading Standards........................................................... 13

     B.    Plaintiffs' Allegations of Purely Commercial Activity Do Not,
As A Matter Of Law, Constitute Aiding and Abetting An
International Law Violation................................................. 15

     C.    Plaintiffs Fail To Allege That The Defendant Banks Acted With
The Purpose Of Facilitating Hezbollah's Rocket Attacks ................. 16

     D.    Plaintiffs Fail To Plead Causation ...................................... 19

     E.    Plaintiffs Fail To State A Claim Against The Defendant Banks
For "Conspiracy" ............................................................. 21

CONCLUSION……………. .................................................................. 22

## TABLE OF AUTHORITIES

### CASES

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007) ..................................... 13

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007) ....................................................... passim

Best Van Lines v. Walker, 490 F.3d 239 (2d Cir. 2007) ......................................................... 5, 6

Burnett v. Al Boraka, 274 F. Supp. 2d 86 (D.D.C. 2003) ............................................................ 2

Cornell v. Assicurazioni Generali, S.p.A., Consol., No. 97 Civ. 2262,
    2000 WL 1099844 (S.D.N.Y. Aug. 7, 2000) ..................................................................... 6, 7

Correspondent Services Corp. v. J.V.W. Investments Ltd., 1
    20 F.Supp.2d 401 (S.D.N.Y.2000) .................................................................................... 9, 10

Daventree Ltd. v. Republic of Azer., 349 F. Supp. 2d 736 (S.D.N.Y. 2004) ....................... passim

De Jesus v. Sears Roebuck & Co., 87 F.3d 65 (2d Cir. 1996) ................................................. 14, 15

Faravelli v. Bankers Trust Co., 85 A.D.2d 335 (1st Dep't 1982) ................................................. 7

First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763 (2d Cir. 1994) ................................ 19

Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258 (1992) ......................................................... 20

In re Sinaltrainal Litig., 474 F. Supp. 2d 1273 (S.D. Fla. 2006) ............................................. 14, 21

In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765 (S.D.N.Y. 2005) ................ passim

In re Terrorist Attacks on Sept. 11, 2001, 538 F.3d 71 (2d Cir. 2008) ................................. 5, 8, 11

Int'l Housing Ltd. v. Rafidain Bank Iraq, 712 F. Supp. 1112 (S.D.N.Y. 1989) .......................... 11

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007) ................................................................................ 13

Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181 (2d Cir. 1998) ..................................................... 5

Khulumani v. Barclay Nat'l Bank Ltd. 504 F. 3d 254 (2d Cir. 2007) ................................... 17, 18

Leema Enterprises, Inc. v. Willi, 575 F.Supp. 1533 (S.D.N.Y. 1983) ................................... 10, 11

Lerner et al. v. Fleet Bank, 459 F.3d 273 (2d Cir. 2006) ....................................................... 17, 20

**TABLE OF AUTHORITIES**
**(CONTINUED)**

Mastafa v. Austl. Wheat Bd. Ltd.,  No. 07 Civ. 7955,
2008 WL 4378443 (S.D.N.Y. Sept. 25, 2008)............................................................ 15, 17, 21

Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2d Cir. 1996)................................... 5

Nat'l Sun Indus., Inc. v. Dakahlia Commercial Bank, Cairo, No. 95-7961,
1997 U.S. App. LEXIS 9662 (2d Cir. May 2, 1997) ................................................................. 7

Neewra, Inc. v. Manakh Al Khaleej Gen. Trading and Contracting Co., No. 03 Civ. 2936,
2004 WL 1620874 (S.D.N.Y. July 20, 2004) ..................................................................... 7, 10

Nigerian Nat'l Petroleum Corp. v. Citibank, N.A., No. 98 Civ. 4960,
1999 WL 558141 (S.D.N.Y. July 30, 1999) ........................................................................... 15

Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries, No. 03 Civ. 1681,
2004 WL 2199547 (S.D.N.Y. Sept. 29, 2004)..................................................................... 7, 11

Presbyterian Church of Sudan v. Talisman Energy, Inc.,
453 F. Supp. 2d 633 (S.D.N.Y. 2006)................................................................................... 15

Robinson v. Overseas Military Sales Corp., 21 F.3d 502 (2d Cir. 1994) ...................................... 8

Schenker v. Assicurazioni Generali S.p.A., Consol., No. 98 Civ. 9186,
2002 WL 1560788 (S.D.N.Y. July 15, 2002) ...................................................................... 5, 7

Strauss v.  Crédit Lyonnais, S.A., No. CV-06-0702,
2006 WL 2862704 (E.D.N.Y. Oct. 5, 2006).................................................................... 15, 16

Stutts v. De Dietrich Group, No. 03-CV-4058,
2006 WL 1867060 (E.D.N.Y. June 30, 2006) .............................................................. passim

Taub v. Colonial Coated Textile Corp., 54 A.D.2d 660 (1st Dep't 1976).................................... 7

Thomas v. Ashcroft, 470 F.3d 491 (2d Cir. 2006)........................................................................ 5

United States v. Int'l Brotherhood of Teamsters, 945 F. Supp. 609 (S.D.N.Y. 1996) ................ 11

Weiss v. Nat'l Westminster Bank PLC, 453 F. Supp. 2d 609 (E.D.N.Y. 2006) .................... 15, 16

Whitaker v. Am. Telecasting, Inc., 261 F.3d 196 (2d Cir. 2001) .................................................. 5

## TABLE OF AUTHORITIES
### (CONTINUED)

#### STATUTES

18 U.S.C. § 2339C ................................................................................... 19

28 U.S.C. § 1350 ...................................................................................... 4

N.Y. C.P.L.R. § 302 .......................................................................... 2, 6, 11

N.Y. C.P.L.R. § 302(a)(1) .............................................................. passim

N.Y. C.P.L.R. § 302(a)(2) ............................................................... 6

N.Y. C.P.L.R. § 302(a)(3) ............................................................... 6

#### RULES

Fed. R. Civ. P. 12(b)(2) .............................................................. passim

Fed. R. Civ. P. 12(b)(6) ........................................................ 1, 2, 12, 14

Fed. R. Civ. P. 4(k) ............................................................... 11, 12

Defendants Fransabank s.a.l. ("Fransabank") and Banque Libanaise Pour Le Commerce ("BLC Bank") (collectively, "the Defendant Banks") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for failure to state a claim pursuant to Rule 12(b)(6).

## PRELIMINARY STATEMENT

The Complaint in this action alleges that Fransabank and BLC Bank, two of Lebanon's most respected financial institutions, along with the other named defendant banks, are liable for missile attacks launched by Hezbollah against Israel in the summer of 2006.

Plaintiffs do not allege—nor could they—that the Defendant Banks planned these attacks, or were aware that they were coming, or themselves had any dealings with Hezbollah.  Rather, through the use of innuendo, conclusory allegations, and guilt-by-association, plaintiffs allege that the Defendant Banks aided and abetted the attacks by performing routine commercial transactions for customers of the banks.  While the Complaint alleges that these customers were "fronts" for Hezbollah, there is not a single factual allegation anywhere in the Complaint tying so much as a single transaction performed by any of the Defendant Banks to any transfer of funds to Hezbollah, much less any fact demonstrating that any funds in the customer accounts were ever used to finance the purchase of a missile.

Given the severe reputational damage that comes from being labeled an accomplice of terrorists, the courts have demanded, even before the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), that such allegations

receive heightened scrutiny.   Claims consisting of nothing more than conclusory allegations, such as those alleged in this Complaint, are to be dismissed.  *See In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 831 (S.D.N.Y. 2005) ("*In re Terrorist Attacks I*") ("in light of 'the extreme nature of the charges of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations[.]'" (citation omitted)); *Burnett v. Al Boraka*, 274 F. Supp. 2d 86, 103 (D.D.C. 2003) ("the use of the privileged medium of a lawsuit to publicly label someone an accomplice of terrorists can cause incalculable reputational damage.").

This Complaint fails, and should be dismissed, for at least two separate reasons.

First, it should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  Although the Complaint alleges long-arm jurisdiction under New York Civil Practice Law and Rules ("CPLR") § 302, it fails to allege facts sufficient to demonstrate that the Defendant Banks—which have no offices, or employees here— are transacting business in New York within the meaning of CPLR § 302.  To the extent that plaintiffs premise their jurisdictional argument on the fact that the Banks maintain correspondent bank accounts in New York to effect money transfers, the law is clear, as set forth *infra*, that the mere maintenance of such accounts to facilitate international financial transactions is insufficient, as a matter of law, to establish personal jurisdiction over them under New York law and fails to satisfy due process.

Second, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  As set forth below, the Complaint consists of nothing more than highly-charged labels, conclusions and a formulaic recitation of the elements of the causes of

action asserted therein.   It is utterly lacking in facts—because there are none—demonstrating any wrongdoing by the Banks or any purposeful intent by them to facilitate the missile attacks by Hezbollah on Israel.   Moreover, the Complaint's allegations, in the end, add up to no more than a claim that the Defendant Banks performed routine banking services for their customers.   The courts in this Circuit have consistently held that banks do not owe a duty to non-customers (such as plaintiffs here) to protect them from the intentional torts of their customers, nor are they liable under claims of aiding and abetting liability for maintaining bank accounts and transferring funds at their customers' requests.

For these and other reasons, as set forth more fully below, the Complaint should be dismissed.

## THE COMPLAINT'S ALLEGATIONS

Plaintiffs are 57 Israeli citizens whose relatives were killed or who were injured in Israel by missiles fired by Hezbollah from southern Lebanon between July 12, 2006 and August 14, 2006, during the Israel-Hezbollah conflict.

Defendants Fransabank and BLC Bank are Lebanese banks.   Fransabank was established in Beirut in 1921 and provides a broad range of retail, commercial, corporate, investment and international banking services to local and international clients. (Compl. ¶¶ 32-33.)   BLC Bank was established in 1950 and operates 34 branches in Lebanon.   In August 2007, 97.52% of BLC Bank's capital was acquired by Fransabank. (Compl. ¶¶ 34-35.)   In addition to Fransabank and BLC Bank, the Complaint names as defendants three other Lebanese banks, Bank of Beirut s.a.l., Banque Libano-Francaise

s.a.l., and Middle East Africa Bank.  (Compl. ¶ 2.)  Finally, the Complaint name as defendants John Does 1 to 100, who are allegedly unknown financial institutions or their agents, and allegedly conspired with, acted in concert, or aided and abetted Hezbollah in committing the wrongful acts set forth in the Complaint.  (Compl. ¶¶ 42-43.)

Plaintiffs claim that all of the defendant banks aided and abetted Hezbollah in its rocket attacks on them because customers of the banks, which the Complaint alleges are "fronts" for Hezbollah, maintained accounts at their institutions, and because the banks executed money transfers into and out of these accounts at their customers' direction.  (*See, e.g.*, Compl. ¶¶ 21, 23, 69-134, 151.)  Nowhere in the Complaint do plaintiffs allege facts regarding any specific transfers, or facts demonstrating that any money transfers effectuated by the banks at the request of their customers ever resulted in funds going to Hezbollah, or that the banks ever had any transactions with Hezbollah, or that any of the customer accounts were used to finance arms purchases, or that the banks had knowledge of such purchases or intended, by providing routine banking services to its customers, to purposely facilitate Hezbollah's attack on Israel or cause injury to the plaintiffs, or even that the banks engaged in any correspondent bank transactions on behalf of any of the customers named in the Complaint during the time period in question.  Instead, as set forth more fully below, the Complaint substitutes conjecture for fact, and conclusory allegations for details.

The Complaint contains nine counts, all of which premise the subject matter jurisdiction of this Court on the Alien Tort Claims Act, 28 U.S.C. § 1350 ("ATS").  Each count, in essence, alleges, in conclusory form, that the Defendant Banks aided, abetted and conspired with Hezbollah in acts of terrorism causing injury to the plaintiffs.

4

## ARGUMENT

## I.

## THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

### A.     The Governing Standards

Defendant Banks move to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(2).  The Complaint, on its face, fails to plead facts sufficient to establish the Court's exercise of personal jurisdiction over them.  While the Complaint is replete with conclusory allegations about the Defendant Banks, it utterly fails to allege any facts demonstrating that the Banks either "transact business" in New York within the meaning of CPLR § 302(a)(1) or have sufficient contacts with the United States to satisfy the requirements of the due process clause of the Fifth Amendment.

To withstand a motion to dismiss for lack of personal jurisdiction, plaintiffs bear the burden of establishing that jurisdiction exists.  *Best Van Lines v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007); *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006); *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  As the Second Circuit has consistently held, in determining whether a plaintiff has met this burden, a court "will not draw 'argumentative inferences' in the plaintiff's favor," nor will it "accept as true a legal conclusion couched as a factual allegation."  *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 93 (2d Cir. 2008) ("*In re Terrorist Attacks II*"); *see also Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998); *Schenker v. Assicurazioni Generali S.p.A., Consol.*, No. 98 Civ. 9186, 2002 WL 1560788, at *2 (S.D.N.Y. July 15, 2002) ("[C]onclusory non-fact-specific jurisdictional allegations . . .

are insufficient to establish even a *prima facie* showing of personal jurisdiction" (*quoting Cornell v. Assicurazioni Generali, S.p.A., Consol.*, No. 97 Civ. 2262, 2000 WL 1099844, at *1 (S.D.N.Y. Aug. 7, 2000)).)   Yet conclusory allegations and argumentative inferences are all that plaintiffs present here.  As such, the Complaint should be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2).

> **B.     Defendants Are Not Subject To Long-Arm Jurisdiction in New York under CPLR § 302**

So scanty is the jurisdictional pleading in this case, that plaintiffs, while alleging long-arm jurisdiction under CPLR § 302, do not even specify the sub-section of New York's long-arm statute upon which they rely.  (*See* Compl. ¶ 29.)  Since the Complaint does not allege a tortious act within the state (CPLR § 302(a)(2)) or injury to any person or property within the state (CPLR § 302(a)(3)), it is assumed, for purposes of this motion, that plaintiffs premise jurisdiction on CPLR § 302(a)(1) which provides for jurisdiction over a non-domiciliary who "transacts any business within the state."

In order for personal jurisdiction to be asserted over a foreign defendant pursuant to CPLR § 302(a)(1), two conditions must be satisfied:  first, the defendant must have transacted business within the state; second, the claim against the defendant must arise out of that activity.  *Best Van Lines*, 490 F.3d at 246.  In determining whether a defendant has "transacted business" in New York, courts look at "the totality of the defendant's activities within the forum" to determine whether they have engaged in business activities in New York.  *Id.*

Here, the Complaint does not allege any of the traditional activities of a bank within New York which would demonstrate, for jurisdictional purposes, that the defendant banks are "purposely availing themselves" of the privilege of conducting

business here.   There are no allegations that the Defendant Banks are qualified or licensed to do business in New York, solicit customers here, maintain any offices in New York, have employees here, or have telephone numbers to make or receive calls in New York.   Nor are there any allegations that the Banks maintain any accounts in New York for any customer identified in the Complaint.

Plaintiffs' entire jurisdictional argument appears to be their allegation that the Banks maintained correspondent bank accounts in New York to effect dollar transactions and money fund transfers.   (*See, e.g.*, Compl. ¶¶ 29, 151.)[1]   The law is clear, however, that the "mere maintenance of correspondent bank accounts to facilitate international financial transactions or money transfers" is insufficient, as a matter of law, to establish personal jurisdiction.   *Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736, 762 (S.D.N.Y. 2004); *see also Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*, No. 03 Civ. 1681, 2004 WL 2199547, at *5 n.8 (S.D.N.Y. Sept. 29, 2004); *Neewra, Inc. v. Manakh Al Khaleej Gen. Trading and Contracting Co.*, No. 03 Civ. 2936, 2004 WL 1620874, at *3 (S.D.N.Y. July 20, 2004); *Nat'l Sun Indus., Inc. v. Dakahlia Commercial Bank, Cairo*, No. 95-7961, 1997 U.S. App. LEXIS 9662, at *4-5 (2d Cir. May 2, 1997); *Faravelli v. Bankers Trust Co.*, 85 A.D.2d 335, 339, 447 N.Y.S.2d 962, 965 (1st Dep't 1982); *Taub v. Colonial Coated Textile Corp.*, 54 A.D.2d 660, 661, 387 N.Y.S.2d 869, 870 (1st Dep't 1976).

---

[1]   Plaintiffs also allege, in conclusory form, that all of the defendant banks "engaged in substantial conduct in connection with the schemes detailed here in furtherance of their conspiracy in New York." (Compl. ¶ 29.) However, one can search the Complaint in vain for any facts identifying or detailing what this conduct was in New York.  As the court held in *Cornell*, 2000 WL 1099844, at *1, "legal conclusions couched as factual allegations are not facts and cannot substitute for facts" to establish jurisdiction.  S*ee also Schenker*, 2002 WL 1560788, at *2.

Nor does the Complaint plead facts establishing that the use by the Banks of correspondent accounts here is at the "very root of the action." *Daventree*, 349 F. Supp. 2d at 762. The Complaint does not allege any facts connecting any New York correspondent bank account to the rocket attacks that injured plaintiffs in Israel. Nor does it identify any fund transfers by the Defendant Banks, using their correspondent bank accounts, to or from any of the entities which are characterized in the Complaint as Hezbollah fronts. Rather, the Complaint relies upon "argumentative inference" piled upon "argumentative inference" in an effort to manufacture long-arm jurisdiction based on the presence of correspondent bank accounts here. In effect, plaintiffs argue that Hezbollah must have purchased mortars and rockets in U.S. dollars; those mortars and rockets must have been used in the 2006 attacks on Israel; Hezbollah must have obtained these U.S. dollars from the various organizations which plaintiffs describe as Hezbollah fronts in the Complaint; these organizations, in turn, must have obtained their U.S. dollars from the defendant banks; and Defendant Banks must have obtained their U.S. dollars from their correspondent accounts in New York, notwithstanding plaintiffs' own admission that "all checks in U.S. currency are cleared in Lebanon through the Central Bank of Lebanon" and all banks in Lebanon must participate in the Clearing Houses established in Lebanon for U.S. currency exchange. (Compl. ¶ 150.) As noted *supra*, in determining whether plaintiffs have met their burden of establishing jurisdiction, courts "will not draw [such] 'argumentative inferences' in the plaintiff's favor," particularly where, as here, they are stacked one on top of the other in an effort to create jurisdiction. *In re Terrorist Attacks II*, 538 F.3d at 93 (*quoting Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (citation omitted).)

Furthermore, even if one were to accept the conclusory jurisdictional premise of the Complaint, that the Banks used their correspondent accounts in New York to facilitate money transfer to and from their customers in Lebanon, long-arm jurisdiction would still not be established under CPLR § 302(a)(1).  This was the jurisdictional argument expressly rejected by the Court in *Daventree*.

In *Daventree*, plaintiffs were foreign investors suing under the Alien Tort Claims Act and RICO.  349 F. Supp. 2d at 742.  Plaintiffs claimed that they had been defrauded by the Government of Azerbaijan and other foreign defendants in connection with a privatization of the government-owned oil company.  *See id.*  Like plaintiffs here, the *Daventree* plaintiffs alleged that a Swiss bank, acting through its correspondent bank account in New York, aided and abetted the other defendants in their wrongdoing by transferring money (allegedly stolen from plaintiffs) through its New York account to customers outside the United States.  *See id.* at 746.  In granting the bank's motion to dismiss under Fed. R. Civ. P. 12(b)(2), the court (Judge Stein) emphasized the critical difference for jurisdictional purposes between those cases where a correspondent bank is used by a defendant to transact business "on its own behalf" and is thus "at the very root of the action" against the bank thereby giving rise to personal jurisdiction, and those cases where, as here, the correspondent bank account is allegedly used to facilitate international money transfers for the bank's customers, in which event no personal jurisdiction exists under CPLR § 302(a)(1):

> Plaintiffs allege that defendant Privatbank maintained a correspondent bank account in New York, through which funds were transferred in connection with the alleged racketeering scheme.  (Compl. At 115-118).  Plaintiffs, relying on *Correspondent Services Corp. v. J.V.W. Investments Ltd.*, 120 F.Supp.2d 401 (S.D.N.Y.2000),

9

> assert that that degree of contact with New York is
> sufficient to subject the Hyposwiss defendants to personal
> jurisdiction pursuant to CPLR § 302(a)(1).
>
> Such a reading, however, saddles the holding in
> *Correspondent Services Corp.* with an unwarranted
> breadth.   Contrary to plaintiffs' suggestion, the bank
> account in *Correspondent Services Corp.* was used by a
> defendant bank to transact business on its own behalf with
> a plaintiff in that action and was thus "at the very roots of
> the action in this case."   *See id.*, 120 F.Supp.2d at 405.  No
> such allegations are present here.   Plaintiffs' allegations
> better resemble the jurisdictional facts present in *Leema
> Enterprises, Inc. v. Willi*, 575 F.Supp. 1533 (S.D.N.Y.
> 1983), where another court in this district found the "mere
> maintenance of correspondence bank accounts to facilitate
> international financial transactions or money transfers"
> insufficient to establish personal jurisdiction.   *See id.* at
> 1537; *see also*, *Neewra, Inc. v. Manakh Al Khaleej General
> Trading and Contracting Co.*, 03 Civ. 2936, 2004 WL
> 1620874 at *3-4 (S.D.N.Y., Jul.20, 2004).

*Daventree*, 349 F. Supp. 2d at 762.

The argument in favor of exercising jurisdiction was, if anything, stronger in *Daventree* than it is here.  There, unlike here, plaintiff at least identified specific fund transfers that passed through the correspondent bank account.  *See id.* at 746.  In addition, the funds transferred in *Daventree* belonged to the plaintiff.  *Id.*  Nonetheless, the fundamental legal principle affirmed by the court in *Daventree* and dispositive here is that the maintenance of a correspondent bank account by a foreign bank, through which it facilitates money transfers on behalf of its customers, does not constitute "transacting business" for purposes of CPLR § 302(a)(1) and does not subject foreign banks, such as defendants here, to personal jurisdiction in New York.

Accordingly, since the Complaint, on its face, fails to allege facts demonstrating that the Defendant Banks transacted business in New York within the

meaning of New York's long-arm statute, the Defendant Banks are not subject to jurisdiction in New York pursuant to CPLR § 302.

> C. **The Assertion of Jurisdiction Over the Banks Would Violate Due Process**

For this Court to exercise personal jurisdiction over the Defendant Banks, whether under New York's long-arm statute or pursuant to Fed. R. Civ. P. 4(k), plaintiffs must demonstrate that the Banks have "sufficient contacts with the United States, as a whole, exist to satisfy the requirements of the due process clause of the Fifth Amendment." *Daventree*, 349 F. Supp. 2d at 760 (*citing United States v. Int'l Brotherhood of Teamsters*, 945 F. Supp. 609, 617 (S.D.N.Y. 1996)); *see also In re Terrorist Attacks II*, 538 F.3d at 93. The Complaint, on its face, fails to allege jurisdictional facts sufficient to satisfy the "minimum contacts" due process requirement since it fails to identify any contacts with the United States outside of the alleged correspondent banking relationships in New York. *See Northrop Grumman*, 2004 WL 2199547, at *15 (due process was not satisfied where the banks' purposeful availment was found to be, at best, minimal because their contacts with New York consisted of demanding payment and maintaining a correspondent banking relationship); *Daventree*, 349 F. Supp. 2d at 763-764; *Int'l Housing Ltd. v. Rafidain Bank Iraq*, 712 F. Supp. 1112, 1118-19 (S.D.N.Y. 1989); *Leema*, 575 F. Supp. at 1537.

Piecing together various disparate allegations of the Complaint, the most that plaintiffs allege is that the Defendant Banks maintain correspondent bank accounts and that the Banks engaged in international money transfers using the SWIFT or CHIPS networks. (Compl. ¶¶ 171-178.) However, as Judge Stein held in *Daventree*, based upon a careful review of the cases in this and other Circuits, the making of wire transfers or

11

accepting checks on behalf of a bank's clients does not establish the "minimum contacts" to subject a non-resident bank to jurisdiction:

> The norm of "fundamentals of substantial justice" does not accord with a finding of minimum contacts where a non-resident bank engages in wire transfers or cash withdrawals on behalf of its clients as part of the financial process.

349 F. Supp. 2d at 764 (citation omitted).

Since Defendant Banks neither transact business in New York within the meaning of CPLR § 302(a)(1) nor have sufficient minimum contacts with New York or the United States for the exercise of personal jurisdiction pursuant to Rule 4(k), this Court should dismiss the Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

## II.

### THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)

Plaintiffs' general and conclusory allegations that the Defendant Banks violated the ATS are insufficient to state a claim under prevailing pleading standards. Plaintiffs also fail to allege, as they must, facts demonstrating that the Defendant Banks intended the banking services they provided to their customers to facilitate rocket attacks by Hezbollah against Israeli citizens, and that the Defendant Banks' provision of normal financial services to their customers did, in fact, substantially contribute to those acts. Finally, Plaintiffs have failed to adequately plead their claims of conspiracy.

**A.** **Plaintiffs' Conclusory Allegations With Respect To All Counts Of The Complaint Are Insufficient To State A Claim Under Prevailing Pleading Standards**

In *Twombly*, the Supreme Court held that:

> To survive dismissal, the plaintiff must provide grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level."

*See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) (*quoting Twombly*, 127 S. Ct. at 1965); *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). Plaintiffs must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65. Moreover, a complaint must allege sufficiently "plausible" facts, not merely "conceivable" facts. *Id.* at 1974. Even before *Twombly* enunciated this pleading standard, federal courts, including the Second Circuit, demanded that "in light of the extreme nature of the charges of terrorism, fairness requires extra-careful scrutiny of Plaintiffs' allegations as to any particular defendant" when applying Rule 8's notice pleading requirement. *In re Terrorist Attacks I*, 349 F. Supp. 2d at 831 (citation and internal quotation omitted) (dismissing plaintiffs' claims against banks where plaintiffs offered no facts to support their conclusory allegations that the bank knew its customers were supporting terrorism).

Applying the *Twombly* and *In re Terrorist Attacks I* holdings here compels dismissal of the Complaint. Of the Complaint's 414 paragraphs, only 15 mention either of the Defendant Banks by name. (Compl. ¶¶ 2, 20, 32-36, 77, 80, 94, 97, 134, 163-65.) With few exceptions, plaintiffs purport to assert allegations about all of the defendants generally. Each of these allegations is a paradigm of unsupported conclusion, *e.g.*:

> Each Defendant named herein: (a) committed tortious acts in concert or pursuant to a common design with Hezbollah; or (b) knew or consciously avoided knowing that Hezbollah's conduct was a breach of duty yet provided Hezbollah with substantial assistance or encouragement; of (c) gave substantial assistance to Hezbollah in accomplishing its tortious result and each Defendant's conduct, separately considered, breached duties to the Plaintiffs [(Compl. ¶ 23.)]

These allegations fail to adequately state a claim under any standard of pleading. *See Twombly*, 127 S. Ct. at 1964-65;[2] *De Jesus v. Sears Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) ("A complaint which consists of conclusory allegations unsupported by factual assertions fails even on the liberal standard of Rule 12(b)(6).") (citation omitted).

Even the Complaint's few "specific" allegations as to Fransabank and BLC Bank are deficient and fail to state a claim. (Compl. ¶¶ 60, 69, 77, 88-94, 125, 134.) Apart from identifying certain customers of the Banks and alleging that they are "fronts" for Hezbollah, there are absolutely no facts alleged which demonstrate that (a) the Banks ever performed a dollar denominated transaction for any of these customers, (b) the Banks had actual knowledge of what their customers did with their own funds once these funds were withdrawn by them from their accounts, (c) any funds maintained by customers of the Banks were ever, in fact, given by these customers to Hezbollah, (d) any funds maintained by customers were, in fact, used by Hezbollah to buy missiles, (e) the

---

[2]    This type of generalized pleading of conclusions, lumping all the defendants together, would have failed to adequately state a claim under even the more liberal pleading standards prior to *Twombly*. *See, e.g., In re Terrorist Attacks I*, 349 F. Supp. 2d at 832 (allegations against Saudi American Bank were dismissed where no facts were alleged to support conclusory allegations that the bank *knew* its provision of banking services to certain customers supported terrorism); *Stutts v. De Dietrich Group*, No. 03-CV-4058, 2006 WL 1867060, at *13 (E.D.N.Y. June 30, 2006) (dismissing claims against the banks were allegations of the banks' knowing and substantial participation in the unlawful conduct were conclusory rote incantations of the elements of a claim).

14

Banks engaged in anything other than normal commercial activity for their customers, or (f) the Banks had actual knowledge of and intentionally encouraged Hezbollah to launch missile attacks into Israel between July 12 and August 14, 2006.

Instead of facts sufficient to support any of the Counts of the Complaint, one is left with formulaic recitations and conclusory allegations, which are insufficient, as a matter of law, to state a claim. *See Twombly*, 125 S. Ct. at 1964-65; *see, e.g.*, *DeJesus*, 87 F.3d at 70; *Mastafa v. Austl. Wheat Bd. Ltd.*, No. 07 Civ. 7955, 2008 WL 4378443, at *4-5 (S.D.N.Y. Sept. 25, 2008); *Stutts*, 2006 WL 1867060, at *13-14; *In re Terrorist Attacks I*, 349 F. Supp. 2d at 832-33; *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 453 F. Supp. 2d 633, 677 (S.D.N.Y. 2006).

**B.    Plaintiffs' Allegations of Purely Commercial Activity Do Not, As A Matter Of Law, Constitute Aiding and Abetting An International Law Violation**

Notwithstanding its hyperbole, innuendo and conclusory allegations, all the Complaint actually alleges is that the Defendant Banks maintained accounts and executed wire transfers for their Lebanese customers (but not Hezbollah).  (*See, e.g.*, Compl. ¶¶ 77, 94, 134.)  Courts in this Circuit, however, have consistently held that "the mere maintenance of a bank account and the receipt or transfer of funds do not . . . constitute substantial assistance" for purposes of establishing a claim for aiding and abetting liability.  *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 621-22 (E.D.N.Y. 2006) (citation omitted); *Strauss v.  Crédit Lyonnais, S.A.*, No. CV-06-0702, 2006 WL 2862704, at *9 (E.D.N.Y. Oct. 5, 2006); *see also Stutts*, 2006 WL 1867060, at *14 n.24; *Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, No. 98 Civ. 4960, 1999 WL 558141, at *8 (S.D.N.Y. July 30, 1999) (repeated executions of wire transfers for millions of dollars did not constitute substantial assistance).

15

In *Weiss*, for example, the Court dismissed an aiding and abetting claim against a bank, finding plaintiffs' allegations that the bank "knowingly maintained numerous accounts" through which it "ha[d] collected, received, transmitted, and provided millions of dollars . . . to agents of Hamas" insufficient to hold the bank liable for Hamas's use of the funds. 453 F. Supp. 2d at 621. Similarly in *Strauss*, the court dismissed an aiding and abetting claim finding that mere allegations that a bank knowingly maintained accounts for a Hamas front group and knowingly transferred money to Hamas controlled entities were insufficient to render the bank liable. *See* 2006 WL 2862704, at *9. Finally, in *Stutts*, the court dismissed plaintiffs' claims against banks, and other corporate defendants, where plaintiffs alleged, in pertinent part, that the defendant banks' provision of financial services to the Iraqi regime of Saddam Hussein aided and abetted its acquisition and use of injurious chemical agents. In dismissing these claims, the *Stutts* Court noted: "courts have declined to impose liability on defendants for participation in a commercial enterprise that allegedly assists in another's violations of international law." 2006 WL 1867060, at *12.

In sum, the provision of routine banking services, such as those performed by the Defendant Banks here, do not constitute substantial assistance sufficient to state a claim under the ATS.

**C.    Plaintiffs Fail To Allege That The Defendant Banks Acted
With The Purpose Of Facilitating Hezbollah's Rocket Attacks**

The Second Circuit's recent *per curiam* decision in *Khulumani v. Barclay Nat'l Bank Ltd.*, together with the concurring opinions of Judges Katzmann and Korman (who dissented in part), set forth a stringent "intent" requirement for ATS claims that plaintiffs fail to satisfy.  *See* 504 F.3d 254, 289 (2d Cir. 2007).

Judges Katzmann and Korman (in part) separately concurred in the *per curiam* opinion of the court.  In their concurring opinions, after a comprehensive analysis of international law sources, each separately concluded that aiding and abetting liability only arises under the ATS "when the defendant (1) provides practical assistance to the principal which has a substantial effect on the perpetration of the crime, and (2) does so with the *purpose* of facilitating the commission of that crime."  *Id.* at 277, 332 (emphasis supplied).[3]  In his opinion, Judge Korman specifically adopted the following argument:

> With regard to *facilitating* the commission of a crime, the aider and abettor must act with '*purpose*.' . . . This means more than the mere knowledge that the accomplice aids the commission of the offence … rather he must know as well as wish that his assistance shall facilitate the commission of the crime.

*Id.* at 332.  *See also Lerner et al. v. Fleet Bank*, 459 F.3d 273, 292 (2d Cir. 2006); *Mastafa*, 2008 WL 4378443 at *6.

---

[3]    The concurring opinion of Judge Hall, the *Khulumani* majority's other member, adopts the Restatement (Second) of Torts § 876(b), which provides for liability where one "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself."  *Khulumani*, 504 F.3d at 287-89.  Even if this Court were to apply this test here, it would reach the same conclusion, *i.e.*, that plaintiffs' Complaint insufficiently alleges that the Defendant Banks sought to further illegal acts or an illegal enterprise through their provision of routine banking services.

Notably, Judges Katzmann and Korman each cited the Nuremberg *Ministries Case*, in which a purposeful facilitation standard was applied. *Khulumani*, 504 F.3d at 276-77, 318. In the *Ministries Case* a bank officer was cleared of criminal wrongdoing where he "was alleged to have made a loan, knowing or having good reason to believe that the borrower would use the funds in financing enterprises conducted in violation of either national or international law, but was not proven to have made the loan with the purpose of facilitating the enterprises' illegal activities." *See id.* at 276 (internal quotations omitted).

Here, plaintiffs have clearly failed to allege any facts indicating that the Defendant Banks acted with the *purpose* of facilitating the rocket attacks by Hezbollah, which was not ever a customer of the Banks. Instead, much like in the *Ministries Case* discussed by Judges Katzmann and Korman, plaintiffs insufficiently allege in conclusory form that the Defendant Banks either "knew," or "consciously and/or recklessly avoiding knowing" that their alleged conduct in maintaining accounts for their customers would result in acts of violence by Hezbollah.[4] This formulaic repetition of the elements of an aiding and abetting claim is no substitute for alleging facts sufficient to show purposeful facilitation, and clearly runs afoul of the stringent pleading requirement established by the Supreme Court in *Twombly*.

Similarly, the failure to set forth facts evidencing an intent by the Defendant Banks to facilitate the rocket attacks by Hezbollah during the 31-day war with Israel is fatal to its claim under Count I that the Defendant Banks financed terrorism.

---

[4]    *See* Compl. ¶ 367 ("Defendants . . . intending, knowing, or consciously or recklessly avoiding knowing that their actions would assist Hezbollah in the commission of the attacks."); *see also id.* ¶¶ 133, 181, 355, 367, 400, 413 (repeating "knowing" or "consciously or recklessly avoiding knowing" allegations).

Although plaintiffs cite to 18 U.S.C. § 2339C (Compl. ¶ 356), § 2339C provides for liability only if a person (1) unlawfully and willfully (2) provides or collects funds (3) with the intention or knowledge that they be used (4) to carry out an act intended to cause death or serious bodily harm.[5]   Apart from conclusory allegations contained in ¶¶ 351-354 of the Complaint, which merely purport to recite the elements of a terrorism claim, no facts are alleged, as set forth *supra*, to show that the Defendant Banks (1) did anything unlawful in the conduct of their business (2) provided or collected any funds that were transmitted to or used by Hezbollah or (3) intended that any of the services they provided their customers result in the shelling of any civilians by Hezbollah during the 31-day war.

### D.     Plaintiffs Fail To Plead Causation

Since plaintiffs seek to assert common law torts in violation of the law of nations, they were obligated, in the Complaint, to plead causation.  No such causation is plead in any of the Counts of the Complaint.  "Central to the notion of proximate cause is the idea that a person is not liable to all those who may have been injured by his conduct, *but only to those with respect to whom his acts were a substantial factor in the sequence of responsible causation*, and whose injury was reasonably foreseeable or anticipated as a natural consequence."  *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994)) (emphasis supplied).  Here, the causal chain is non-existent.  The Complaint fails to set forth any facts tying the Banks' provision of financial services to its customers to the injury sustained by plaintiffs.  Instead, as noted earlier, inference is piled upon inference and conclusory assumption is stacked onto conclusory assumption.

---

[5]     Although the Complaint also refers generically to "criminal statutes of New York, the criminal laws of Israel, and international treaties, agreements, conventions and resolutions …" (Compl. ¶ 356), an intent to cause the unlawful act is clearly an essential element of any claim for a violation of such law.

For example, no facts are alleged demonstrating that any services provided by the Defendant Banks to their customers ever resulted in funds going to Hezbollah, or that if any funds did go to Hezbollah they were used to buy rockets, or that those rockets were, in fact, used to cause plaintiffs' injury.

As the Second Circuit held in *Lerner*, 459 F.3d at 286, citing its previous holding in *In Re Terrorist Attacks I*, 349 F. Supp. 2d at 830, "banks do not owe non-customers a duty to protect them from the intentional torts of their customers." Moreover, even if banks did owe them a duty of care, a finding of proximate cause in this context would, in effect, require a bank to be an insurer for any damages caused by its customers. As the Second Circuit held in *Lerner*, liability does not extend that far. Citing Justice Scalia's concurrence in *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 287 (1992), the Court held:

> Life is too short to pursue every known act to its most remote consequences; 'for want of a nail, a kingdom was lost' is a commentary on fate, not the statement of a major cause of action against a blacksmith.

*Lerner*, 459 F.3d at 287. *See also Talisman Energy*, 453 F. Supp. 2d at 677 (granting summary judgment to ATS defendant where plaintiffs failed to show how the defendant's alleged wrongful conduct substantially assisted the Sudan Government in committing acts of genocide, crimes against humanity, and war crimes); *Stutts*, 2006 WL 1867060, at *4 (dismissing claims against banks alleged to have provided financial services to the Iraqi regime of Saddam Hussein for lack of causation). Here, as well, plaintiff have failed to allege any facts establishing that the Defendant Banks, by maintaining accounts for their customers, proximately caused the injury claimed by plaintiffs.

E.    **Plaintiffs Fail To State A Claim Against The Defendant Banks For "Conspiracy"**

The conspiracy counts of the Complaint are merely the deficient aiding and abetting claims and financing terrorism claims relabeled as conspiracy causes of action.  As is the case with the aiding and abetting claims discussed *supra*, the Complaint fails to allege any facts to support its conclusory and formulaic recitation that the Defendant Banks conspired to commit the international law violations on which plaintiffs base federal court jurisdiction.  (*See* Compl. ¶¶ 23, 363, 365, 375-76, 292-93, 409.)

In order to state a claim for conspiracy, plaintiffs must allege the underlying tort and:  (a) a corrupt agreement between two or more persons, (b) an overt act in furtherance of the agreement, (c) the parties intentional participation in the furtherance of a plan or purpose, and (d) the resulting damage or injury.  *See Daventree*, 349 F. Supp. 2d at 757.  Here, no such facts are alleged.

The Complaint fails to set forth any facts evidencing that the Defendant Banks had any agreement (much less a corrupt agreement) with Hezbollah, or any agreement with their own customers other than to perform routine banking services.  Nor, as set forth above, are any facts alleged demonstrating that the Defendant Banks intended to participate in any plan of Hezbollah's to launch mortar attacks into Israel between July 12 and August 14, 2006.  In the absence of such factual allegations, the conspiracy claims are insufficient as a matter of law and must be dismissed.  *See In re Sinaltrainal Litig.*, 474 F. Supp. 2d 1273, 1296 (S.D. Fla. 2006) (dismissing "murky allegations of a vague conspiracy" for lack of subject matter jurisdiction under the ATS); *Mastafa*, 2008 WL 4378443, at \*5; *see also Stutts*, 2006 WL 1867060, at \*14 (conspiracy claims premised on conclusory or general allegations will not survive a motion to dismiss).

## **CONCLUSION**

For all of the foregoing reasons, we respectfully request that the Court grant the Defendant Banks' motion to dismiss for lack of personal jurisdiction and failure to state a claim, with prejudice, together with such other and further relief as this Court deems appropriate.

Dated: November 26, 2008

Respectfully Submitted,

By: _____/s/_____
Jonathan D. Siegfried
Lawrence S. Hirsh
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY  10019
(212) 259-8000

Attorneys for Defendants Fransabank s.a.l.
and Banque Libanaise Pour Le Commerce